IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DEBORA HERNANDEZ in representation of minor daughter, K.Z.F.H<br>Plaintiff<br><br>v.<br><br>BRITISH AIRWAYS PLC; INTERNATIONAL CONSOLIDATED AIRLINES GROUP S.A.; JOHN DOE; ABC INSURANCE COMPANY and XYZ INSURANCE COMPANY<br>Defendants | CIVIL NO.: 25-1235<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**NOW APPEARS** Plaintiff Debora Hernández in representation of her minor daughter, K.Z.F.H. through their undersigned attorney, and very respectfully allege and request as follows:

### I.   JURISDICTION AND PARTIES

1. Jurisdiction exists pursuant to 28 U.S.C. § 1331, which grants Federal Courts the original jurisdiction in civil actions arising under treaties of the United States of America. The instant action arises under a Treaty of the United States, known as the Convention for the Unification of Certain Rules for International Carriage by Air, done May 28, 1999, ICAO Doc. 9740m (hereinafter referred to as the Montreal Convention).

2. At all times herein mentioned, the United States of America and the United Kingdom were and still are parties to the Montreal Convention.

3. The air passage provided for by Defendant British Airways as the flight was "international

1

transportation" as defined by Article 1 of the Montreal Convention.

4. Pursuant to Article 33 of the Montreal Convention:

   *"1. An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.*

   *2. In respect of damage resulting from the death or injury of a passenger, an action may be brought before one of the courts mentioned in paragraph 1 of this Article, or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft, or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement.*

   *3. For the purposes of paragraph 2,*

   *(a) „commercial agreement "means an agreement, other than an agency agreement, made between carriers and relating to the provision of their joint services for carriage of passengers by air;*

   *(b) „principal and permanent residence "means the one fixed and permanent abode of the passenger at the time of the accident. The nationality of the passenger shall not be the determining factor in this regard."*

5. Plaintiff K.Z.F.H., is a minor, was fourteen (14) years old at the time she was injured and resides with her mother, Debora Hernández, in Humacao, Puerto Rico.

6. Defendant British Airways PLC is a commercial airline engaged in the business of international air transportation. At all times relevant to this action, it provided transportation to minor Plaintiff K.Z.F.H. on October 18, 2023, and is domiciled or incorporated in London, United Kingdom.

7. Defendant International Consolidated Airlines Group, S.A. (IAG), is an entity with a registered office in Madrid, Spain and corporate headquarters located in London, England. It is the parent company of various airlines, including British Airways.

8. Defendant John Doe is a placeholder for any other entity and/or individual whose identity is currently unknown but who may be liable for the damages sustained by Plaintiff on October 18, 2023.

9. Defendant ABC Insurance Company is the name of an insurance company that issued an insurance policy covering the aircraft being operated by British Airways PLC on October 18, 2023.

10. Defendant XYZ insurance company is the name of an insurance company used to designate the insurance provider that issued a policy covering the potential liability of International Consolidated Airlines Group, S.A. for the acts or omissions giving rise to this action.

11. Plaintiff demands trial by jury on all issues so triable.

## II.   GENERAL ALLEGATIONS

12. On June 30, 2023, the plaintiff's grandmother purchased air flight tickets for her and her granddaughter, minor Plaintiff K.Z.F.H. through American Airlines. The purpose of the flight was to provide community service to certain persons residing in Nairobi, Africa.

13. The flight tickets were for a roundtrip from San Juan, Puerto Rico to Nairobi, Africa. The

initial trip departed from San Juan, Puerto Rico on September 19, 2023, and arrived in Nairobi, Africa on September 21, 2023.

14. The return trip to Puerto Rico, which departed from Nairobi, consisted of two layovers, one in London and another one in Miami, Florida, for a total of three (3) flights. These flights took place on October 18, 2023.

15. On October 18, 2023, at 10:25 a.m., minor Plaintiff and her grandmother were passengers of flight number 207, operated by British Airways. This flight departed from the London Heathrow Airport (LHR) and arrived in Miami, Florida (MIA) on that same date at approximately 2:45 p.m.

16. The aircraft row where Plaintiff and her grandmother were seated consisted of four (4) seats, with one seat positioned directly next to the aisle. Minor Plaintiff K.Z.F.H. was seated in seat 77G, the aisle seat, while her grandmother, was seated immediately to her left in the adjacent middle seat.

17. During the flight, minor Plaintiff requested a cup of coffee to a Defendant British Airways employee named Alessandra Coy ("Coy"), who was a stewardess working on flight no. 207.

18. Defendant British Airways' employee Coy brought the airline catering trolley towards the row where minor Plaintiff K.Z.F.H. was sitting at, with the coffee dispenser that contained the extremely hot coffee.

19. Defendant British Airways' employee, Alessandra Coy, placed an empty coffee cup in the center of minor Plaintiff K.Z.F.H.'s tray table, which was positioned directly over her lap. She then proceeded to pour boiling hot coffee into the cup while it was still in the center of the tray table.

20. Defendant British Airways' employee, Alessandra Coy, asked minor Plaintiff K.Z.F.H. if she would like sugar packets and a stir stick, to which the minor Plaintiff responded affirmatively.

21. Without warning, and while placing the stir stick into the cup, Defendant British Airways' employee Alessandra Coy spilled the contents of the cup—boiling hot coffee—directly onto the lap and knee of minor Plaintiff K.Z.F.H.

22. Minor Plaintiff K.Z.F.H immediately began to scream and cry in pain, as the scalding liquid soaked through her pants and burned the skin on her upper leg and abdomen.

23. The burns caused extreme pain, and the reaction of the crew was alarmingly inadequate. Flight attendant Coy left the scene and returned only briefly to clean the surrounding area.

24. No immediate medical assistance or proper first aid was offered to minor Plaintiff K.Z.F.H. by British Airways personnel.

25. At the time of the incident, only two (2) hours had passed in what was a transatlantic flight scheduled to last approximately ten (10) hours. Minor Plaintiff K.Z.F.H and her grandmother were left to manage the injury on their own for the remainder of the flight, without any meaningful assistance from Defendant British Airways or its crew.

26. Minor Plaintiff K.Z.F.H felt completely abandoned and disregarded by Defendant British Airways and its employees.

27. Minor Plaintiff K.Z.F.H's grandmother escorted her to the bathroom to assess and clean the wounds as best as she could.

28. Her grandmother tried to calm minor Plaintiff K.Z.F.H. down, as she was panicking, and her skin was burning.

29. Dr. Marcos Parrilla, a licensed physician from Puerto Rico and a fellow missionary, was

aboard the flight from London to Miami, Florida. He was called by plaintiff's grandmother and he was able to examine minor Plaintiff K.Z.F.H during the flight. Dr. Parrilla confirmed the burns were serious, likely second-degree.

30. Despite Minor Plaintiff K.Z.F.H. wearing a thick jogger, the temperature of the coffee was so hot that it penetrated the fabric and caused significant injury.

31. Minor Plaintiff K.Z.F.H. suffered second degree burns on her thigh and knee.





32. Upon observing the second degree burns of the Minor Plaintiff K.Z.F.H and the lack of assistance from Defendant British Airways, Dr. Parrilla requested a first aid kit from the flight crew and was provided with a small box containing a lotion not suited for second-degree burns. However, this was the only option available that Defendant British Airways staff had on board and provided to minor Plaintiff K.Z.F.H.

33. The lotion, not suited for second-degree burns, was applied in an effort to alleviate the injury.

34. Consequently, Plaintiff's grandmother photographed the second degree burns and showed them to Defendant British Airways' employee, Alessandra Coy. When the flight attendant saw the picture, she gasped in shock but still did not take any meaningful action to assist minor plaintiff K.Z.F.H.

35. The only additional response from British Airways staff during the remaining hours of the flight was an apology and the offering of chocolate—an action that failed entirely to

address the seriousness of the injury or the need for medical care.

36. Minor Plaintiff remained in severe pain for the duration of the flight, crying and visibly distressed, without any proper treatment or care.

37. Plaintiff's grandmother inquired Defendant British Airways' employee, Alyssa Coy, about the procedure for filing an incident report, proceeding the situation. Attendant Coy stated she would prepare one and provided instructions for accessing it online.

38. The report, however, was never prepared by Flight Attendant Alessandra Coy or any other British Airways employee, nor was it ever provided to minor plaintiff K.Z.F.H. or Plaintiff's grandmother despite assurances that it would be.

39. Upon landing at Miami International Airport at approximately 2:45 p.m., no medical personnel, such as paramedics, nurses, or doctors, were present to assist minor Plaintiff K.Z.F.H.

40. Despite the severity of her injuries and the advance knowledge of the incident by the flight crew, Defendant British Airways failed to arrange for any form of medical support upon arrival.

41. Plaintiff's grandmother approached the British Airways service counter at the airport to report the incident and request medical help. She was told that the matter could only be addressed by filing a claim online, and no immediate help was offered.

42. In other words, their solution to assisting a minor that suffered second degree burns caused by their own negligence, could only be solved by filing a claim online.

43. Defendant British Airways failed to take any meaningful steps to address the harm it caused, either during the flight and upon landing, thereby exacerbating the physical and emotional distress suffered by minor Plaintiff K.Z.F.H.

### III.   CAUSE OF ACTION AGAINST DEFENDANTS

44. Plaintiff re-alleges and incorporates by reference herein all the allegations contained in paragraphs 1-36 above.

45. Defendants are liable to Plaintiff under the provisions of Article 17 of the Montreal Convention. This article states that:

    *"The carrier shall be liable upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking".*

    In this case, the incident that caused injury to minor Plaintiff K.Z.F.H. occurred on board the aircraft, during active flight operations on British Airways Flight No. 207, thereby meeting the jurisdictional requirements of Article 17.

46. Pursuant to Article 21 of the Montreal Convention, Defendants are strictly liable up to 128,821 SDRs convert to approximately $174,548.52 USD. Defendants are liable in excess of this amount due to negligence of their employee.

47. Defendant British Airways PLC owed a non-delegable duty of care to ensure the safety and well-being of all passengers, including minor Plaintiff K.Z.F.H., during the entire duration of the flight. This duty extends to the safe handling of hot beverages.

48. Defendant's employee, Alessandra Coy, acted negligently by placing an empty coffee cup in the center of the minor Plaintiff's tray table rather than securing it in the designated cup holder area, thereby increasing the risk of spillage and injury.

49. Defendant's employee, Alessandra Coy, acted negligently by pouring scalding hot coffee into the cup without warning.

50. Defendant's employee, Alessandra Coy, acted negligently by inserting a stir stick into the freshly poured cup of hot coffee in a careless manner, which directly caused the beverage to spill onto the minor Plaintiff.

51. Defendant's employee, Alessandra Coy, acted negligently by focusing on cleaning the surrounding area (tray table, seat, and floor) rather than addressing the immediate medical needs and emotional distress of the injured child.

52. Defendant's employee, Alessandra Coy, acted negligently by failing to provide or initiate any form of medical assistance or first aid in response to the burn injury sustained by the minor Plaintiff.

53. Defendant's employee, Alessandra Coy, acted negligently by acted negligently by not notifying other flight crew members or requesting in-flight medical support following the incident.

54. Defendant's employee, Alessandra Coy, acted negligently by failing to escalate the situation to the pilot or senior crew members, thereby delaying any potential in-flight medical response or coordination of care.

55. Defendant's employee, Alessandra Coy, acted negligently by failing to properly document the incident or prepare a formal incident report in accordance with airline protocol.

56. Defendant's employee, Alessandra Coy, acted negligently by not communicating with ground personnel to arrange for medical assistance upon arrival; despite knowing the flight was transatlantic and the child was in distress for hours.

57. At the time of the incident, the stewardess, Alessandra Coy, was an employee of Defendant British Airways PLC and was acting in the course and scope of her employment. Her

actions were within the purview of her employment.

58. As a result of said employee's actions, Defendant British Airways PLC is vicariously liable for all the serious burn injuries suffered by the minor Plaintiff K.Z.F.H. under the doctrine of respondent superior.

59. The airline and its staff failed to exercise reasonable care in handling hot beverages, resulting in the physical and emotional injuries to minor Plaintiff K.Z.F.H.

## IV.   DAMAGES

60. As a direct result of the accident caused by Defendant British Airways, minor Plaintiff K.Z.F.H. sustained second-degree burns, resulting in severe physical pain and lasting emotional trauma.

61. The burns caused visible, disfiguring scarring that has compromised her physical comfort and deeply affected her self-image.

62. In the weeks following the incident, minor Plaintiff K.Z.F.H. was unable to walk without assistance and required help with essential tasks, including using the bathroom and dressing. Even short outings became challenging; during a visit to Walmart, she was forced to use a motorized scooter due to the severity of her injuries.

63. The injuries also deprived minor Plaintiff K.Z.F.H. of meaningful family experiences. Planned vacations, including a long-anticipated trip to Disney World, had to be canceled.

64. During an attempted stay at a resort, minor Plaintiff K.Z.F.H. was unable to leave the room due to heat-related pain and limited mobility, rendering the trip effectively impractical.

65. The visible nature of the injuries has left minor Plaintiff K.Z.F.H. feeling vulnerable and ashamed, causing significant emotional damages.

66. Minor Plaintiff K.Z.F.H. now avoids public spaces out of fear of others seeing or commenting on her scars, leading to social withdrawal and emotional isolation.

67. Once an active and confident child, minor Plaintiff K.Z.F.H. has experienced a noticeable decline in emotional well-being.

68. Minor Plaintiff K.Z.F.H. frequently cries, avoids social interaction, and no longer engages in activities she once loved, such as modeling, going to the beach, or wearing her favorite clothing like shorts and swimsuits.

69. As a result of her injuries, minor Plaintiff K.Z.F.H. sought treatment from her dermatologist, Dr. Marely Santiago Vázquez, who advised that while laser therapy may offer some improvement in the appearance of the scarring, the procedure is both painful and costly and will not guarantee restoring the skin's original condition.

70. The accident has also imposed a significant financial burden on the family.

71. Minor Plaintiff K.Z.F.H.'s family has incurred unexpected costs for medical supplies, prescribed creams, burn care products, specialized clothing, and consultations with mental health and dermatological professionals. Additional costs for counseling and potential future treatments—including laser therapy—are anticipated.

72. The psychological effects of the trauma remain profound.

73. Minor Plaintiff K.Z.F.H. continues to suffer from anxiety, emotional withdrawal, and a sense of isolation. Her nightly crying and diminished ability to connect with others underscore the severity of the lasting emotional harm she has endured.

74. Defendants' failure to follow proper procedures in handling hot beverages aboard the aircraft directly caused these injuries and resulting physical and emotional damages.

75. Their negligence has had devastating physical, emotional, and financial consequences for

minor Plaintiff K.Z.F.H. and her family.

76. Because of that, the damages suffered by minor Plaintiff K.Z.F.H. are valued in excess of the sum of FIVE HUNDRED THOUSAND DOLLARS ($750,000.00).

77. The Montreal Convention provides that the Court is allowed to compensate the Plaintiff in addition to the limits set forth in Article 21, in accordance with its own law, the whole or part of the Court costs and of the other expenses for the litigation incurred by the Plaintiff, including interest.

78. Plaintiff demands judgment against Defendants and in favor of Plaintiff on all counts.

## TRIAL BY JURY DEMANDED

79. Plaintiff hereby demands trial by jury.

**WHEREFORE**, it is respectfully requested that this Honorable Court enter judgment against the Defendants, for the amounts demanded above and in total in an amount in excess of $750,000.00.

**RESPECTFULLY SUBMITTED.**

In San Juan Puerto Rico on April 25, 2025.

**CERTIFICATE OF SERVICE**: I certify that on this same that I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will automatically send notice of such filing to all attorneys of record.

**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street; 3rd Floor
San Juan, P.R. 00912
Tel: (787) 641-4545;
Fax: (787) 641-4544
david.indiano@indianowilliams.com

s/ David Indiano

13

DAVID INDIANO
USDC PR Bar No. 200601

**LAW OFFICES OF FRANCISCO M. TRONCOSO, P.S.C.**
PO Box 9023352
San Juan, PR 00902-3352
Tel: (787) 231-0020 and (787) 722-0741
ftroncosolaw@yahoo.com


*s/Francisco M. Troncoso*
FRANCISCO M. TRONCOSO
Bar No. 120007